AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
One Apple cellular phone, Model #A1453, FCC ID )
#BCG-E2642A, IMEI #352029067133309.(See )   *17 SW194*
Attachment A for full identifiers) )

**F I L E**
**● 15 2017**
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Eastern_____ District of _____Virginia_____ *(identify the person or describe property to be searched and give its location):*

### See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __922(a)(6), 371__ , and the application is based on these facts:  See Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Thomas W. Byrd Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/15/2017__

City and state: __Richmond, VA__

/s/
_____
Roderick C. Young
*Judge's signature*
**United States Magistrate Judge**

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN THE MATTER OF THE SEARCH OF
(1) One Apple cellular phone, Model #A1453,
FCC ID #BCG-E2642A, IMEI
#352029067133309.  Currently located at the
ATF Richmond III Field Office, 600 E. Main
Street, Richmond, Virginia.

Case No. _17 sw194_

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Special Agent Thomas W. Byrd being first duly sworn, hereby depose and state as

follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a search warrant authorizing the examination of property—an electronic

device—which is currently in law enforcement possession, and the extraction from that property

of electronically stored information described in Attachment B.

2.      I, Thomas Wayne Byrd have been employed as a Special Agent (SA) with the

Bureau of Alcohol, Tobacco and Firearms (ATF) since July 2015 and I am currently assigned to

the Richmond III field office.  As a SA with ATF I am primarily responsible for conducting

criminal investigations that concern the enforcement of our nation's federal firearm laws. In the

performance of my duties, I have investigated and assisted in the investigation of matters

involving illegal purchasing and trafficking of firearms, tobacco and illicit drugs. I have

previous law enforcement experience as Special Deputy with the Monroe County Sheriff's Office

in Bloomington, Indiana, in 2005, a Tactical Response Force Officer with Murray Guard, a

1

contractor for the Department of Energy (DOE) in 2008, civilian police officer in Quantico, Virginia, with the United States Marine Corps in 2009. In addition to my law enforcement experience, I have served in the United States Army Reserve and Army National Guard from June 2002 to June of 2015; currently on inactive status with an honorable service record highest rank attained First Lieutenant/Infantry.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge, or that of other sworn law enforcement officers participating in this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is (1) One Apple cellular phone, Model #A1453, FCC ID #BCG-E2642A, IMEI #352029067133309 (SUBJECT DEVICE). Currently the SUBJECT DEVICE is located at the ATF Richmond III Field Office, 600 E. Main Street, Richmond, Virginia.

5.      The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT STATUTORY PROVISIONS

6.      **False Statement as to material fact to an FFL:**  18 U.S.C. § 922(a)(6) provides that it is a crime make a false official statement to a federally licensed firearms licensee (FFL).

7.      **Conspiracy to Commit a False Statement as to Material Fact to an FFL:** 18 U.S.C. § 371 provides that it is a crime for two or more persons to conspire to commit any offense against the United States.

## TECHNICAL TERMS

8.      Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  **Wireless telephone**:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras

3

also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

4

borders, even when the devices communicating with each other are in the same state.

f. **Sim Card**: Subscriber Identity Module card. A smart card that includes but not limited to cellphone phone number, customer identity and other data.

g. **SD Card**: (Secure Digital Memory Card) Memory storage device utilized in computers and/or cellular phones for additional cellular phone storage components/files compatible that frequently contain files that include but not limited to: cellular phone downloads, photos and videos.

9.     Based on my training, experience, and research, I know the SUBJECT DEVICE has capabilities that include but not limited to; serve as a wireless telephone, digital camera/video recorder, portable music/media player, send/receive: emails/documents/photographs/videos/text messages.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence of drug/firearm trafficking, possession and indicia of ownership to SUBJECT DEVICE.

## PROBABLE CAUSE

10.     On May 25, 2017, Special Agent (SA) Thomas Byrd and SA Darrell Bonzano, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) interviewed Audasia KELLY (SSN: XXX-XX-0618/ DOB: XX/XX/1995). KELLY was questioned concerning 2 firearms transactions that occurred on January 14th and 15th of 2017 involving the purchase of eight (8) firearms. KELLY stated that on those two dates, she went to a gun show with her cousin, Asia SAYLES (SSN: XXX-XX-7166/DOB: XX/XX/1995) and two other males that KELLY did not know. KELLY was shown photographs of Elijah MONEY (SSN: XXX-XX-9593/DOB: XX/XX/1995) aka "LA LA," and Aazim LOVE JR (SSN: XXX-XX-9675/DOB: XX/XX/1996); KELLY positively identified

MONEY and LOVE JR as the other males present at the gun show on both dates. KELLY stated that she was given money to purchase the firearms from either MONEY or LOVE JR. As compensation for purchasing the firearms for MONEY, LOVE, and SAYLES, KELLY was to receive two of the purchased handguns. KELLY said that the two firearms she was supposed to receive as payment were stolen out of her vehicle, suspecting the responsible parties of the theft to be MONEY, LOVE and SAYLES. KELLY purchased the following firearms.

      a. Smith and Wesson Model M&P Shield 40 caliber pistol serial number (SN#):
         HN24391
      b. Smith and Wesson Model SD40E 40 caliber pistol SN# FVE0279
      c. Sig Sauer model P320 40 caliber pistol SN# 50A077051
      d. Taurus model PT11G2 9mm caliber pistol SN# TJX60150
      e. Taurus model PT11G2 9mm caliber pistol SN# TJX60477
      f. Taurus model PT11G2 9mm caliber pistol SN# TJX60159
      g. Taurus model PT11G2 9mm caliber pistol SN# TJU19753
      h. SCCY model CPX-2 9mm caliber pistol SN# 430246

11.    On June 20, 2017, SA Byrd and Bonzano interviewed Rasheka PARKER (SSN: XXX-XX-7652 / DOB: XX/XX/1994) concerning a firearms purchase on January 21, 2017. PARKER told SA Byrd and SA Bonzano that she was contacted by SAYLES via Facebook account "Asia Renee/Facebook user ID# 100001166851915" by instant messenger a day prior to the firearms purchase. PARKER was propositioned by SAYLES if she was interested in making $150 to purchase firearms. PARKER was shown photographs of MONEY and LOVE JR, whom she positively identified as the two males who were present when she went to purchase the firearms on January 21. PARKER explained that the four of them first went to a gun show but MONEY and LOVE JR did not see the firearms they wanted to purchase so they all left. After the four of them left, MONEY researched another gun store, deciding to go to CE Tactical in Suffolk, Virginia. PARKER explained that MONEY and LOVE JR gave PARKER what she estimated to be three and four thousand dollars and instructed PARKER what types of firearms to purchase.

PARKER went into the gun store with SAYLES, they both handled a few firearms, and PARKER purchased the guns. PARKER, SAYLES, MONEY and LOVE JR were stopped by the Isle of Wright Sheriff Office (IOWSO) for speeding. During the traffic stop, Deputy Acey searched the vehicle and located the firearms purchased by PARKER inside a duffel bag. PARKER was charged in connection with local law violations and the firearms were seized by the IOWSO. PARKER purchased the following firearms.

    a.  SCCY Model CPX-2 9mm caliber pistol S/N# 367827
    b.  SCCY Model CPX-2 9mm caliber pistol SN# 367557
    c.  SCCY Model CPX-2 9mm caliber pistol SN# 427640
    d.  SCCY Model CPX-2 9mm caliber pistol SN# 451643
    e.  Springfield Model XD 40 caliber piston SN# XD385619
    f.  Smith and Wesson Model 637-2 38 caliber pistol SN# DDFS625
    g.  Smith and Wesson Model SDV9E 9 mm caliber pistol SN# FYS8099

12.    PARKER provided consent for SA Byrd to search her cellular phone to recover communications between PARKER, MONEY, SAYLES, and LOVE JR. Upon forensic download of PARKER's Facebook instant messenger from her cell phone, law enforcement recovered communications between PARKER and SAYLES. Such conversations include SAYLES admitting to PARKER she attends gun shows to purchase firearms; SAYLES offering PARKER $150 to buy firearms; SAYLES telling PARKER that SAYLES's boyfriend and her boyfriend's cousin, later identified as MONEY and LOVE JR., would be present during the purchase; and, SAYLES asking PARKER if PARKER has any criminal background.

13.    Law enforcement also recovered communications between MONEY and PARKER, with MONEY using cellular phone number 856-414-5368. Conversations between MONEY and PARKER include MONEY asking PARKER for his firearms; MONEY stating that if he does not get the firearms back, he will lose $3000; and, MONEY offering PARKER up to $500 for PARKER to pick up the firearms from IOWSO and turn them over to him.

7

14.     In my training and experience, I know that firearm traffickers frequently use cellphones to set up firearm transactions, store the contact information for buyers and suppliers, store balance sheets to keep track of trafficking activities, communicate with other known traffickers or customers, and send or store images documenting firearm possession and trafficking. Based on the intercepted cellular communications from other persons involved in the criminal conspiracy and the presence of the SUBJECT DEVICE on MONEY's person during his arrest for the instant crimes, probable cause exists for the search of the SUBJECT DEVICE.

15.     The SUBJECT DEVICE is currently in the lawful possession of the ATF. It came into the ATF's possession as described above as seized during the course of the arrest of MONEY on July 18, 2017. The SUBJECT DEVICE is currently in secured storage at the ATF Richmond Field Office, 600 E. Main Street, Richmond, Virginia. In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT DEVICE first came into the possession of the ATF.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when. There is probable

cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

9

18.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the SUBJECT DEVICE to human inspection in order to determine whether it is evidence described by the warrant.

19.     *Manner of execution.* Because this warrant seeks only permission to examine a SUBJECT DEVICE already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

20.     Moreover, the Government will file a written pleading in this case within one hundred twenty (120) days after the execution of the search warrant notifying the court that the imaging process of digital evidence seized from the target location is complete, and the forensic analysis of computers and media has begun. Such notice will include confirmation that written notice has been provided to the defendant or his counsel informing the defendant that the forensic examination of evidence seized from him has actually begun. Such notice to the defendant and the Court is not intended to mean, and should not be construed to mean, that the forensic analysis is complete, or that a written report detailing the results of the examination to date will be filed with the Court or provided to the defendant or his counsel. This notice does not create, and is not meant to create, additional discovery rights for the defendant. Rather, the sole purpose of this notice is to notify the defendant that, beyond the simple seizure of his property, a forensic search of that property has actually begun.

## **CONCLUSION**

21.     I submit that this affidavit supports probable cause for a search warrant authorizing

the examination of the SUBJECT DEVICE described in Attachment A to seek the items described

in Attachment B.

Respectfully submitted,

Thomas W. Byrd
Special Agent
ATF

Subscribed and sworn to before me on September _15_ 2017

/s/

Roderick C. Young
United States Magistrate Judge

11

## ATTACHMENT A

1.      The property to be searched is: SUBJECT DEVICE (1) One Apple cellular phone, Model #A1453, FCC ID #BCG-E2642A, IMEI #352029067133309.  Currently the SUBJECT DEVICE is located at the ATF Richmond III Field Office, 600 E. Main Street, Richmond, Virginia.

This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.    All records on the SUBJECT DEVICE described in Attachment A that relate to violation of 18 U.S.C. § 922(a)(6), including but not limited to:

    a.  SUBJECT DEVICE user accounts/basic demographic information;

    b.  contact lists;

    c.  call records;

    d.  call history;

    e.  any information related to the purchase, possession or trafficking of firearms and/or ammunition;

    f.  photographs/videos/documentation;

    g.  text messages, emails, multimedia messages;

    h.  web browser history;

    i.  Balance sheets;

    j.  Tower data;

    k.  All data and contents of the SUBJECT DEVICE.

2.    Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1